PRODUCTION CREDIT ASSOCIATIONS v DEPARTMENT OF
TREASURY

1. TAXATION—INCOME TAXES—STATUTES—STATUTORY CONSTRUCTION.
   The United States Internal Revenue Code of 1954 is to be used as
   an interpretive tool in construing any words or terms in the
   Michigan Income Tax Act of 1967 which are not adequately
   explained within the latter act (MCLA 206.1 *et seq.;* MSA
   7.557[101] *et seq.).*

2. TAXATION—INCOME TAXES—STATUTES—STATUTORY CONSTRUCTION—
   TAXABLE INCOME.
   The Michigan income tax statute should in general be construed
   so as to make Michigan "taxable income" the same as "taxable
   income" under the Internal Revenue Code, therefore "net
   profits" are to be equal to "gross income" minus various deduc-
   tions as utilized by the Federal Code and the terms "expenses
   and costs" must therefore be read as being coextensive with the
   term "deductions" found in the Internal Revenue Code.

3. TAXATION—INCOME TAXES—NET OPERATING LOSS DEDUCTION—LOSS
   CARRY-BACK.
   The Michigan and Federal income tax laws contain a "net
   operating loss deduction" which allows a corporation sustaining
   a "net operating loss" to carry its losses back three years and
   carry any unused loss forward for five years; the loss must first
   be carried back to the earliest of the "taxable years" to which
   the law can be carried and any portion of the loss which is
   remaining is then applied to successively later tax years until
   it is used up.

4. TAXATION—INCOME TAXES—CORPORATE TAXPAYERS—OPERATING
   LOSSES—LOSS CARRY-BACK.
   Corporate taxpayers which sustained operating losses for the tax
   year of 1969 and carried their losses back to the tax years of
   1966 and 1967 on their Federal tax returns, during which time
   the loss carry-back was "used-up", had to use the same years
   on their Michigan tax returns, for the loss carry-back, and thus

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 71 Am Jur 2d, State and Local Taxation §§ 448–450.

consider the loss carry-back "used-up" prior to 1968, despite the fact that there was no Michigan income tax until 1968.

Appeal from Ingham, Jack W. Warren, J. Sub-22869–22874.) Decided April 5, 1976. Leave to appeal applied for.

Complaints by Production Credit Associations of Lansing, Southeastern Michigan, Grand Rapids, Kalamazoo, Traverse City and the Evening News Association against the Revenue Division of the Michigan Department of Treasury for refunds of state income taxes. The cases were consolidated in circuit court. Summary judgment for plaintiffs. Defendant appeals. Reversed and remanded.

*Dickinson, Wright, McKean & Cudlip* (by *Peter S. Sheldon)*, for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Richard R. Roesch* and *Charles E. Liken,* Assistants Attorney General, for defendant.

Before: ALLEN, P. J., and BRONSON and R. M. MAHER, JJ.

BRONSON, J. Prior to March 15, 1969, plaintiffs each filed with defendant their Michigan income tax returns for 1968 showing various tax liabilities, which were all paid by plaintiffs. In 1971, each plaintiff filed an amended return claiming refunds in various amounts for 1968, resulting from the carry-back of net operating losses sustained by each for its 1969 fiscal year. For purposes of their Federal income tax returns, each plaintiff had carried back the 1969 loss to offset income for the years 1966 and 1967, which "used up" all of that loss.

Defendant disallowed the claims for refund on grounds that the plaintiffs were required to carry back losses to the same years they did so for Federal income tax purposes—1966 and 1967. The Department of the Treasury therefore contended that all loss carry-back had been "used up" prior to 1968 for Michigan income tax purposes as well.

On August 15, 1973, each plaintiff filed a complaint for refund of taxes in Ingham County Circuit Court pursuant to § 421 of the Michigan Income Tax Act, MCLA 206.421; MSA 7.557(1421). The cases were consolidated on July 23, 1974. Plaintiffs filed a motion for summary judgment pursuant to GCR 1963, 117.2(3), which the trial court granted on grounds that the case could be resolved entirely on the basis of statutory construction. The Department of the Treasury appeals here.

The Michigan Income Tax Act of 1967, 1967 PA 281; MCLA 206.1 *et seq.;* MSA 7.557(101) *et seq.,* imposed for the first time an income tax on corporations. Effective January 1, 1968, § 61 of the act imposed a tax rate of 5.6% on the "taxable income" of a corporation. "Taxable income" was defined in § 32 as the "net profits" of the corporation subject to certain adjustments, including interest from government bonds not taxed under the Federal income tax system. The term "net profits" was defined in § 12(3) as follows:

"(3) 'Net profits' means the net gain from the operation of a business, profession or enterprise, after provision for all costs and expenses incurred in the conduct thereof, determined on either a cash or accrual method, on the same basis as provided for in the internal revenue code for federal income tax purposes, but without deduction of any taxes imposed on or measured by income including taxes imposed by this act *and without*

*deduction of net operating loss carry-over or capital loss carry-over sustained prior to January 1, 1968."* (Emphasis added.)

No other reference or definition of "net operating loss carry-over" was written into the statute.

We must first determine whether the Legislature intended to include net operating loss deductions beyond "net operating loss carry-over * * * sustained prior to January 1, 1968". No express language of the act provides for such, but a long-standing doctrine of statutory construction is that *expressio unius est exclusio alterius.* The expression of one thing is the exclusion of another. *Sebewaing Industries, Inc v Village of Sebewaing,* 337 Mich 530, 545; 60 NW2d 444 (1953), *Valenti Homes, Inc v Sterling Heights,* 61 Mich App 537, 540; 233 NW2d 75 (1975). Therefore, if a net operating loss deduction is allowed in general, only the specifically mentioned carry-overs are to be disallowed as deductions under the act.

As indicated from the language of § 12(3), quoted above, provision for "all costs and expenses incurred in the conduct" of a business is to be made when computing the "net gain" of a business. The scope of the terms "costs" and "expenses" is not explained, but the Legislature did not leave us without guidance. Section 2 of the act provides rules of construction:

"Sec. 2. (1) For the purposes of this act, the words, terms and phrases set forth in this chapter and their derivations have the meaning given therein. When not inconsistent with the context, words used in the present tense include the future, words in the plural number include the singular number, and in the singular number include the plural. 'Shall' is always mandatory and 'may' is always discretionary.

"(2) Any term used in this act shall have the same

meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this act to the internal revenue code shall include other provisions of the laws of the United States relating to federal income taxes.

"(3) It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act."

It is clear that as a general rule the United States Internal Revenue Code of 1954[1] is to be used as an interpretive tool.

Section 2(2) does not help us much here, for the terms used in the Michigan act are different than those used in the Internal Revenue Code. In the Federal code, "taxable income" is defined in § 63 as "gross income" for the taxable year minus those "deductions" allowed for corporations (found in §§ 161 through 188). Included as deductions are such items as ordinary trade and business expenses (§ 162), interest payments (§ 163), various state and local taxes, including income taxes (§ 164), bad debts (§ 166), and depreciation (§ 167). An additional deduction, of primary concern here, is found in § 172, and is labeled the "net operating loss deduction". At no point in the Code are the terms "net profits", "net gain" or "cost and expenses incurred in the conduct of a business" given special meaning.

Although § 2(2) gives us little guidance, we find § 2(3) to be dispositive of this issue. That latter section indicates that the Michigan act should in general be construed so as to make Michigan "taxable income" the same as the "taxable in-

---

[1] Int Rev Code of 1954, § 1 *et seq.;* 26 USCA 1 *et seq.* (hereinafter referred to as the Internal Revenue Code).

come" under the Internal Revenue Code. Viewing § 12(3) in that light, we must conclude that "net profits" were intended to be equal to "gross income" minus various "deductions" as utilized by the Federal code. The term "expenses and costs" must therefore be read as being coextensive with the term "deductions" found in the Internal Revenue Code.

Our interpretation of the term "expenses and costs" is consistent with the subsequent qualifying language found in section 12(3). Significantly, the Legislature disallowed the "deduction" of certain items, language paralleling that of the Internal Revenue Code. Further, the items not allowed fall within various of the deductions found in §§ 161 through 188 of the Federal code. Income taxes, allowed under § 164, cannot be deducted. Net capital loss carry-over sustained prior to 1968 and net operating loss carry-over sustained prior to 1968 cannot be deducted. Those items are included within the Federal provision found in §§ 165 and 172, respectively. Those express limitations cutting away from the scope of the deductions allowed under §§ 161 through 188 of the Internal Revenue Code further support the view that those deductions apply in all other cases.

It is worth noting that a minor modification of § 12 in 1969 brought this section closer to the language found in the Internal Revenue Code. 1969 PA 332, effective for all returns for the 1969 calendar year, inserted the phrase "gross income of a business * * * less all costs and expenses incurred in the conduct thereof" in place of "net gain from the operation of a business * * * after provision for all costs and expenses incurred in the conduct thereof". We think that such a revision clearly showed an intent on the part of the Legis-

lature to use language more consistent with that used in the Internal Revenue Code.

We have determined that a "net operating loss deduction" was put into effect for corporate taxpayers by the Michigan Income Tax Act of 1967, *supra,* but we must now decide how that deduction is to be specifically applied for Michigan income tax purposes. Since the statute in effect at the time plaintiff sustained their net operating loss did not define this deduction, we must look to § 172 of the Internal Revenue Code.[2]

A "net operating loss deduction" has been in effect in one form or another for Federal income tax purposes since 1939. The general purpose of this type of provision was discussed by the United States Supreme Court in *Libson Shops, Inc v Koehler,* 353 US 382, 386; 77 S Ct 990, 993; 1 L Ed 2d 924 (1957):

> "The requirement of a continuity of business enterprise as applied to this case is in accord with the legislative history of the carry-over and carry-back provisions. Those provisions were enacted to ameliorate the unduly drastic consequences of taxing income strictly on an annual basis. They were designed to permit a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year."

The "averaging" purpose of this deduction is consistent with our Legislature's decision not to allow carry-over of pre-1968 losses, for there was simply no prior tax liability to spread evenly over a period of years.

The present Federal § 172 embodies the "averag-

[2] 1970 PA 140 revised the statute by incorporating § 12(3) into § 32, and providing a specific definition of "net operating loss deduction".

ing" concept. Subject to limitations not applicable here, a corporation sustaining a "net operating loss"—*i.e.,* a corporation whose deductions for a particular "taxable year" exceed its gross income —may carry its losses back three years and carry any unused loss forward for five years. The loss must first be carried back to the earliest of the "taxable years" to which the loss can be carried. Any portion of the loss which is remaining (after setting it off against the taxable income from the year to which it is carried) is then applied to successively later "taxable years" until it is used up.

An example will clarify the operation of § 172. Suppose a corporation has a net operating loss of $100,000 in 1975, and had taxable incomes, on which it paid the appropriate tax, of $40,000 in 1972, $40,000 in 1973, and $40,000 in 1974. Amended returns can be filed declaring taxable income of $0 in 1972, $0 in 1973, and $20,000 in 1974. The loss was "used up" in 1974 in this example. However, if the loss in 1975 had been large enough, the corporation could have "net operating loss carryovers" for the years 1976, 1977, 1978, 1979, and 1980, in that order.

Neither party has any problem with plaintiffs' actions with respect to their Federal income tax returns. Plaintiffs took "net operating loss carry-backs" for 1966 and 1967 with respect to their original 1969 loss according to the rules stated above, and "used up" their "net operating loss". The dispute centers around the method to be used for Michigan income tax purposes.

Plaintiffs argue that § 172 indicates that "net operating" losses are to be first carried back to the earliest allowable "taxable year", and that "taxable year" refers only to time periods when an

income tax was actually in effect *in Michigan.* Consequently, plaintiffs claim that they can first carry back their 1969 loss to 1968, the first year of the Michigan corporate income tax. We cannot agree.

Plaintiffs' argument is certainly not lacking in logical appeal, but we are not to decide this issue in a vacuum. In § 2(3) of the Michigan act, the Legislature expressly set up a frame of reference for deciding issues of legislative intent. Specifically, that section states that "the *income* subject to tax [is intended to] be the same as taxable *income* as defined * * * in the internal revenue code". (Emphasis added.) We view that section as evidence of an intent to equate the dollar amount of the taxable income for state income tax purposes with the dollar amount of the taxable income for Federal income tax purposes. In addition, we think that it is in keeping with § 2(2) to view the term "taxable income" as a reference to those years in which a *Federal* income tax is in existence. Therefore, we hold that the plaintiffs were properly required to carry back their "net operating loss" for 1969 to the same years as in their Federal income tax returns.

We further hold that the calculation method discussed above does not violate the principles of equal protection.

Reversed and remanded. No costs, a public question being involved.