BODINE ELECTRIC CO., Plaintiff-Appellee, *v.* ROBERT H. ALLPHIN, Director of the Department of Revenue, Defendant-Appellant.

First District (4th Division)   No. 77-255

Opinion filed April 5, 1979.

William J. Scott, Attorney General, of Chicago (John D. Whitenack, Assistant Attorney General, of counsel), for appellant.

Henry M. Grannan, of Henry M. Grannan, Chartered, of Chicago (Robert D. Boyle, of Murphy, Boyle & Banks, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

This suit was brought by Bodine Electric Co. (taxpayer) to review the decision of the Illinois Department of Revenue denying the taxpayer's claim for a refund of its 1969 and 1970 State income taxes. In reversing the Department on administrative review and ordering the refund, the circuit court of Cook County held that the taxpayer was entitled to carry back and deduct a 1971 net operating loss from taxable years 1969 and 1970. From this portion of the final order, defendant, Director of the Department of Revenue, appeals.

For the relevant years 1968 through 1971, the taxpayer filed consolidated Federal income tax returns with its wholly owned subsidiary, Microdyne, Inc. The taxpayer was able to offset its own income against the substantial yearly losses of its subsidiary by filing these consolidated Federal returns. After the Illinois Income Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 1—101 et seq.), went into effect on August 1, 1969, the taxpayer and its subsidiary were required by section 203(d)(2)(E) of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 2—203(d)(2)(E)) to file separate returns for State tax purposes. Accordingly, the taxpayer filed separate State returns for 1969, 1970 and 1971. By reporting income on a separate return basis the taxpayer reported more taxable income for State purposes than for Federal purposes.

On April 1, 1971, the taxpayer sold its interest in Microdyne, Inc., for $1 and the subsidiary's accounts receivable for $1000. This sale was

reflected on the taxpayer's 1971 separate State income tax return as a $2,384,337 net operating loss. However, on its consolidated Federal income tax return for 1971, the taxpayer reported taxable income of $57,707.

On September 15, 1972, the taxpayer filed with the Illinois Department of Revenue, claims for State tax refunds totaling $95,356.63. In its claims, the taxpayer asserted that it was entitled to carry back the net operating loss reflected only on its 1971 separate State return and deduct the loss to offset its 1969 and then its 1970 State taxable income. Because the taxpayer had reported taxable income on its consolidated Federal return for 1971, it had no net operating loss to carry back for Federal purposes. The Department denied the taxpayer's claims for refund and this action ensued.

OPINION

On August 1, 1969, the Illinois Income Tax Act went into effect. Under the Act, a corporation's base income is equal to the taxpayer's "taxable income" (Ill. Rev. Stat. 1971, ch. 120, par. 2—203(b)(1)), as adjusted by certain specified items (Ill. Rev. Stat. 1971, ch. 120, par. 2—203(b)(2)). Taxable income is further defined as "taxable income properly reportable for Federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." Ill. Rev. Stat. 1971, ch. 120, par. 2—203(d)(1).

With special regard to a corporation such as the instant taxpayer, "which is a member of an affiliated group of corporations filing a consolidated income tax return for the taxable year for federal income tax purposes," Federal taxable income means "taxable income determined as if such corporation had filed a separate return for federal income tax purposes for the taxable year and each preceding taxable year for which it was a member of an affiliated group." (Ill. Rev. Stat. 1971, ch. 120, par. 2—203(d)(2)(E).) Read together, these provisions mandate that the taxpayer's State base income is equal to its Federal taxable income as determined on a separate return basis and subject to specified adjustments. Although the taxpayer in this case filed consolidated Federal returns with its subsidiary, it was required to recompute its Federal taxable income on a separate return basis to arrive at its State base income. It is not contended in this appeal that the taxpayer failed to properly employ this method to compute its State taxes for the years in question.

The issue raised by this appeal is whether the taxpayer is entitled to a State tax refund of 1969 and 1970 taxes for a 1971 net operating loss deduction. During the relevant time period, section 172 of the Internal

Revenue Code (26 U.S.C. §172), permitted net operating loss deductions to be carried back three years from the year of the loss and then carried forward five years until the entire loss was absorbed. The taxpayer's $2,384,337 net operating loss, resulting from its sale of Microdyne, Inc., in 1971, was reflected only on its 1971 State income tax return after it computed its Federal taxable income on a separate return basis. Because it filed a consolidated Federal return, no net operating loss appeared on its Federal return and the taxpayer received no refund of Federal income taxes paid.

On appeal, the Department claims that the taxpayer is not entitled to a refund of Illinois taxes because when the taxpayer's net operating loss is carried back three years as required by section 172, the entire loss is absorbed by 1968 Federal taxable income, and, thus, there is no part of the net operating loss to carry forward to 1969 or 1970. The taxpayer contends that since the net operating loss appeared only on the State return, it is a State loss that can only be offset by State taxable income and, since there was no State income tax act in 1968, none of the net operating loss can be absorbed in 1968. Any other construction, the taxpayer argues, would result in an impermissible retroactive application of the Illinois Income Tax Act.

I

The relationship between the Illinois Income Tax Act and the Internal Revenue Code is of primary importance. The taxpayer claims the authority granted by section 172, to carry back and deduct net operating losses from prior years, is incorporated into the Illinois Act by virtue of section 102 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 1—102), which states:

> "Except as otherwise expressly provided or clearly appearing from the context, any term used in this Act shall have the same meaning as when used in a comparable context in the United States Internal Revenue Code of 1954 or any successor law or laws relating to federal income taxes and other provisions of the statutes of the United States relating to federal income taxes as such Code, laws and statutes are in effect for the taxable year."

The trial court adopted the taxpayer's position that section 102 incorporates by reference each and every provision of the Internal Revenue Code, creating two separate and distinct taxing statutes and, consequently, two separate and distinct net operating loss provisions. We disagree. Section 102 provides only that as a rule of construction terms will be given the same meaning for purposes of both State and Federal statutes. *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, does not hold otherwise. There is no provision in the Illinois Act which specifically

adopts all federally allowed deductions; however, the Illinois Act does specifically adopt Federal taxable income as the starting point upon which the State tax is computed.

■█ In *Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100, the court rejected a taxpayer's contention that the provision of the 1970 Illinois Constitution which permitted the Illinois legislature to adopt the laws and regulations of the United States for the purpose of arriving at Illinois net income, required that the legislature adopt the entire body of Federal tax laws rather than merely adopt the taxable income figure on the Federal return. We agree with this statement in that case:

> "A state's scheme of taxation is presumed constitutional, and this presumption is 'overcome only by a clear showing that it is arbitrary and unsupportable by any set of facts.' (*People ex rel. Kutner v. Cullerton* (1974), 58 Ill. 2d 266, 273, 319 N.E.2d 55.) Article IX, section 3(b), states that the laws imposing income taxes may adopt by reference provisions of the tax laws of the United States. *However, there is no constitutional or other requirement that the Internal Revenue Code be adopted in toto. The legislature has elected to use Federal taxable income as a starting point in arriving at corporate net income for Illinois tax purposes. In our opinion, the legislature has acted quite reasonably in adopting this system.*" (Emphasis added.) 62 Ill. App. 3d 450, 453, 379 N.E.2d 100, 103.

Although the legislature has adopted Federal taxable income as a starting point for calculating State corporate income tax, it has not enacted a specific statutory provision allowing a deduction for net operating loss or providing for a carryback or carryforward of a net operating loss to other taxable years. (Compare *In re Avien, Inc.* (2d Cir. 1976), 532 F.2d 273, with *Sheils v. State Tax Com.* (1978), 95 Misc. 2d 605, 407 N.Y.S.2d 823.) The Illinois Act does allow the State taxpayer the advantage of deducting a net operating loss and carrying back or carrying forward the unused portion of the deduction only insofar as such items are for Federal income tax purposes, deducted from the gross income of the taxpayer to arrive at Federal taxable income. Thus, the taxpayer's characterization of its net operating loss as a "state" loss, is misleading.

■█■ The Illinois Income Tax Act states specifically in section 403(a) (Ill. Rev. Stat. 1971, ch. 120, par. 4—403(a):

> "To the extent not inconsistent with the provisions of this Act or forms or regulations prescribed by the Department, each person making a return under this Act shall take into account the items of income, deduction and exclusion on such return in the same

manner and amounts as reflected in such person's federal income tax return for the same taxable year."

The State legislature has not included in the Illinois act, either in section 102 or by other specific section, a provision inconsistent with section 172 of the Internal Revenue Code. We must, therefore, conclude that the taxpayer is entitled to a net operating loss deduction only in the same manner and amount as the taxpayer would have been entitled to such a deduction on its Federal income tax return for the same taxable year. The taxpayer's right to or the amount of a net operating loss deduction must, in the first instance, be measured against Federal taxable income. If the taxpayer is entitled to a Federal net operating loss deduction in a given year, this, in turn, may be used to reduce the taxpayer's State taxable income. Of course, if there is no State taxable income, as was the case in Illinois prior to 1969, the taxpayer obviously cannot obtain a refund for State purposes.

The fact that the instant taxpayer was required to recalculate, for State purposes, its Federal taxable income on a separate return basis, does not necessitate a different result. It merely means that the taxpayer is entitled to a deduction only in the same manner and amount as the taxpayer would have been entitled to the deduction on its Federal income tax return had it filed separately.

On a separate return basis, the taxpayer would have shown a similar net operating loss on its 1971 Federal return. Under section 172, the taxpayer would then have been required to carry back this loss three years, to 1968. The taxpayer's 1968 Federal income would have completely absorbed the loss; thus, the taxpayer would not have been entitled to carry the loss forward or receive a deduction in 1969 or 1970. Since the taxpayer would not have been entitled to the deduction from Federal taxes in 1969 and 1970, we hold he cannot, pursuant to section 403(a) of the Illinois Act, take the deduction from State taxes for those years. See generally *Production Credit Associations v. Department of Treasury* (1976), 68 Mich. App. 409, 242 N.W.2d 794, and *Getty Oil Co. v. Oklahoma Tax Com.* (Okla. 1977), 563 P.2d 627, *appeal dismissed* (1977), 434 U.S. 804, 54 L. Ed. 2d 62, 98 S. Ct. 33.

## II

Citing *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633, and *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465, the taxpayer claims that requiring a 1971 net operating loss to be offset by 1968 income is an impermissible retroactive application of the Illinois Income Tax Act. In the cases relied upon by the taxpayer, the Illinois Supreme Court, in relevant part, held that in enacting the Illinois Income Tax Act, the legislature did not intend to tax appreciation in property that occurred

prior to the effective date of the Act. However, these cases were decided without reaching the question of whether retroactive application rendered the Act unconstitutional.

In reading these cases, we find a judicial intent to limit the holdings to the circumstances presented. After the decision in *Thorpe*, the legislature amended the Illinois Income Tax Act to provide for the valuation limitation announced in *Thorpe* with respect to noncorporate taxpayers only. Subsequently, in *Mitchell*, the supreme court reaffirmed its holding in *Thorpe* with regard to noncorporate taxpayers. (In *Mitchell* the court expressly did not consider the application of the Illinois Act to carryovers.) The *Mitchell* decision has since been interpreted as indicating tacit approval of the denial of a valuation limitation to corporations. *Warren Realty Co. v. Department of Revenue* (1978), 62 Ill. App. 3d 450, 379 N.E.2d 100.

In our analysis of the Illinois Income Tax Act we have found an intent to require taxpayers to carry back their net operating losses to the same years and in the same amount as on their Federal income tax returns. A carryback, by its very nature, affects income earned in previous years; however, this does not render the application of such a provision unconstitutionally retroactive.

■ The granting of a deduction for net operating losses is a privilege created by statute as a matter of legislative grace. (*United States v. Olympic Radio & Television, Inc.* (1955), 349 U.S. 232, 99 L. Ed. 1024, 75 S. Ct. 733.) The legislature, in allowing a reduction in the amount of taxes paid, confers no vested rights. Furthermore, the taxpayer is not entitled to a deduction unless clearly allowed by statute and the burden is on the taxpayer to show he is entitled to the deduction claimed. *Payne v. United States* (Ct. Cl. 1974), 489 F.2d 1404.

■ The Illinois legislature has conferred upon the taxpayer the privilege of deducting a net operating loss and carrying back and carrying forward the unused portion of the deduction in the manner reflected on the taxpayer's Federal income tax return for the same year. The fact that a loss sustained before or in 1971 may be treated differently than a loss sustained after 1971, does not violate principles of equal protection or due process. See generally *Niagara Searchlight Co. v. Commissioner of Internal Revenue* (1953), 20 T.C. 745; *Production Credit Associations v. Department of Treasury* (1976), 68 Mich. App. 409, 242 N.W.2d 794.

As discussed in *Thorpe* the reasonableness of the tax must be measured by the nature of the taxing provision and the temporal impact it will have on the entire scheme. Unlike the valuation of property problem presented in *Thorpe* and *Mitchell* which, "could go back over 56 years from the date the Illinois income tax first became effective" (43 Ill. 2d 36,

52, 250 N.E.2d 633, 642), the problem presented by this case has already been eliminated by the passage of time. We believe the legislature's intent to maintain consistency between State and Federal taxing schemes by adopting Federal taxable income as a base for computing State corporate income tax more than justifies any inequities created under these circumstances.

For the reasons stated, we reverse the decision of the trial court and reinstate the determination of the Department of Revenue.

JOHNSON and ROMITI, JJ., concur.