**INDIANA DEPARTMENT OF STATE REVENUE, Defendant-Appellant,**

v.

**ENDRESS & HAUSER, INC., Plaintiff-Appellee.**

No. 1–1279A368.

Court of Appeals of Indiana, First District.

May 27, 1980.

Rehearing Denied June 27, 1980.

Theo. L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Leonard J. Betley, David M. Mattingly, Barton T. Sprunger, Ice, Miller, Donadio & Ryan, Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

The Indiana Department of State Revenue (Department) appeals from an adverse ruling on Endress & Hauser, Inc.'s (Endress's) Motion for Summary Judgment. The facts were uncontested, and the trial court's judgment was based solely on an interpretation of the applicable Indiana tax statutes.

## FACTS

The undisputed facts are as follows. On March 30, 1970, the taxpayer, Endress, was incorporated as a Massachusetts corporation with its only business location in Beverly, Massachusetts. When it ceased doing business as a Massachusetts corporation on December 31, 1973, Endress had suffered net

operating losses of $362,963.00. On January 16, 1974, Endress reincorporated as an Indiana corporation with its principal office in Greenwood, Indiana, and effected an "F reorganization" pursuant to Section 368(a)(1)(F) of the Internal Revenue Code. Endress thus remained the same taxpayer for federal income tax purposes.

Endress filed timely Indiana adjusted gross income tax returns for the years 1974, 1975, and 1976, but reported no adjusted gross income for these years as a result of deducting the net operating losses suffered in Massachusetts. The Department disallowed the deductions, and Endress paid adjusted gross income and supplemental net income taxes in the amounts of $6,267.16 for the year 1974, $6,082.12 for the year 1975, and $5,412.26 for the year 1976. Endress filed a claim for refund which was denied. Endress then brought the current action seeking a refund of the taxes and interest attributable to the disallowance of the net operating losses for the years, 1974, 1975, and 1976. The trial court held that

> "The Department wrongfully and illegally disallowed the net operating loss deductions claimed by Endress for the years 1974, 1975, and 1976, since the starting point for determining Endress's adjusted gross income for purposes of the Act is 'taxable income' as defined in Section 63 of the IRC, and net operating loss deductions are properly allowable in computing such taxable income. Since Endress had no adjusted gross income within the meaning of IC 6–3–1–3.5 for the years 1974, 1975, and 1976, it had no adjusted gross income derived from sources within the State of Indiana upon which a tax could be imposed under IC 6–3–2–1."

The trial court, therefore, ordered the Department to refund the adjusted gross income and supplemental net income taxes and interest paid by Endress for the years 1974, 1975, and 1976 plus interest as required by law.

We affirm.

## ISSUE

The sole issue in this case is whether the trial court erred in permitting the net operating losses which may be carried over and deducted in arriving at taxable income for federal income tax purposes to be reflected in the computation of Indiana adjusted gross income and supplemental net income taxes. Phrased somewhat differently the issue becomes whether the term "adjusted gross income" should be given the meaning set out by the statute or whether the context requires it be given the meaning adopted by the Department in Circular IT–82.

## DECISION

■ It is a well established principle that courts will accord great weight to long-standing administrative interpretations because they are thought to be indicative of legislative acquiescence. *Baker v. Compton*, (1965) 247 Ind. 39, 211 N.E.2d 162; *Indiana Department of State Revenue v. Sohio Petroleum Co.*, (1976) Ind.App., 352 N.E.2d 95. Such interpretations are not binding on courts, however, if they are wrong. *Id.* In this case the interpretation of the statute was not established as a published policy of the Department until November 27, 1974, near the end of the first tax year for which Endress is seeking to claim a net operating loss carry-over. There is nothing in the record to suggest either the longstanding nature of the interpretation or that it dates from the time of the legislative enactment, both requisites of the doctrine of legislative acquiescence. *Baker v. Compton, supra; State Board of Tax Commissioners v. Wright*, (1966) 139 Ind.App. 370, 215 N.E.2d 57, *reh. den.* 217 N.E.2d 596. Appellant Department's reliance on this theory for authority to support its position that the trial court erred, therefore, is misplaced. Moreover, we feel that the interpretation adopted by the Department is wrong.

Indiana corporations are subject to three (3) separate Indiana income tax statutes in addition to Indiana property and special county and local tax statutes, not to men-

tion the federal tax statutes. Only two (2) of these statutes concern us here: the Indiana Adjusted Gross Income Tax Act (the Act), IC 6–3–1–1 *et seq.*, and the Supplemental Corporate Net Income Tax Act, IC 6–3–8–1 *et seq.* The Adjusted Gross Income Tax Act provides that a tax is to be "imposed on that part of the adjusted gross income derived from sources within the state of Indiana of every corporation." IC 1971, 6–3–2–1 (Burns Code Ed., Repl.1978). It also provides that, in the case of corporations, "adjusted gross income" shall mean

"the same as 'taxable income' as defined in section 63 of the Internal Revenue Code, adjusted as follows:

"(1) Subtract income that is exempt from taxation under this act by the constitution and statutes of the United States;

"(2) Add an amount that is equal to any deduction or deductions allowed or allowable pursuant to section 170 of the Internal Revenue Code;

"(3) Add an amount equal to any deduction or deductions allowed or allowable pursuant to section 63 of the Internal Revenue Code for taxes based on or measured by income and levied at the state level by any state of the United States or for taxes on property levied by any subdivision of any state of the United States."

Ind.Code 6–3–1–3.5(b).[1] None of these adjustments involves net operating losses.

The Supplemental Corporate Net Income Tax Act provides for an additional tax to be imposed on the net income of every corporation. IC 6–3–8–1. "Net income" means "adjusted gross income as defined in IC 1971, 6–3–1–3(b) . . ." and is further adjusted by subtracting the greater of three possible sums not pertinent here. IC 6–3–8–2. Thus, computation of the supplemental corporate net income tax is basically determined by the concept of adjusted gross income. If there is no adjusted gross income, there will be no net income, hence no supplemental corporate net income tax.

■ The term "Internal Revenue Code," as applied in this case, is defined as "the Internal Revenue Code of 1954 of the United States as amended and in effect" on January 1, 1973, and on January 1, 1975. IC 6–3–1–11. A 1977 amendment to the Act, IC 6–3–1–17, incorporates into Indiana law all pertinent provisions of the Internal Revenue Code, together with the rules and regulations of the Code. Although a statutory amendment may raise the presumption that the legislature intended to change the law, it may also reflect their desire to express their original intention more clearly. *Economy Oil Corporation v. Indiana Department of State Revenue,* (1974) 162 Ind. App. 658, 321 N.E.2d 215. According to 1964 Op.Ind. Att'y Gen. No. 17, it was the legislature's intent that the Adjusted Gross Income Tax Act be, as closely as possible, coordinated with and interpreted in harmony with the Internal Revenue Code. It would appear that this 1977 amendment was enacted to make that intention clearer.

■ One of the fundamental rules of statutory construction is that a statute which is clear and unambiguous on its face needs no interpretation. *Economy Oil Corp. v. Indiana Department of State Revenue, supra; Johnson v. Wabash County,* (1979) Ind.App., 391 N.E.2d 1139. If there is room for more than one interpretation, then the court should construe the statute in such a way as to give effect to the general intent of the legislature. *Gonser v. Board of Commissioners for Owen County,* (1978) Ind.App., 378 N.E.2d 425, *trans. den.* It seems to us that the plain meaning of the statutory definitions and words, as well as legislative intent, directs corporations to begin the computation of their adjusted gross income for tax purposes under the Adjusted Gross Income Tax Act with the item denoted as "taxable income" on their federal income tax returns followed by the three adjustments provided by statute. The Department contends, however, that the defi-

---

1. Ind.Code 6–3–1–3.5(b) has subsequently been amended as to minor details, but not as to substance.

nition of adjusted gross income provided by the statute should not govern in this case. They rely on IC 6–3–1–2 which provides: "Except where the context otherwise requires, the definitions given in this article [6–3–1–1—6–3–8–6] govern the construction of this act [6–3–1–1—6–3–8–6]." The Department argues that "the context" requires a definition other than that provided in the statute. They have taken the position that since IC 6–3–2–2 provides that only business income which is derived from sources within the state of Indiana is taxable under Indiana's Adjusted Gross Income Tax Act, then only those net operating losses which are suffered in Indiana may be deducted in calculating adjusted gross income. The Department contends that the context of the Act and equity require the logical conclusion of apportioning both income and net operating losses. We agree with the Department that such conclusion may be logical and result in an equitable distribution of the tax burden. We disagree with the Department, however, that this is what the legislature provided. Under the unique set of facts of this case there is really no need for the Department to discuss apportionment or IC 6–3–2–2 because there was no adjusted gross income to apportion. The legislature clearly demonstrated that it knew how to create exceptions to the definition of adjusted gross income by providing the three (3) specific adjustments noted above. It did not choose to disallow net operating losses.[2] Neither did it choose to disallow casualty, theft, disaster losses, ordinary and necessary business expenses, or any of the other deductions permitted by Section 63 of the Internal Revenue Code except the three set out above. Failure to adhere to the strict statutory formula provided by IC 6–3–1–3(b) would open the door to the Department to apportion or disallow the other deductions permitted by Section 63 of the Code based on the same reasoning.

"[I]t is a well established rule of statutory construction that the statutes levying or imposing taxes are not to be extended by implication beyond the clear import of the language of the statute in order to enlarge their operation. Instead, they are to be construed more strictly against the state and in favor of the taxpayer." (Citations omitted.)

*Economy Oil Corporation v. Indiana Department of State Revenue, supra,* 321 N.E.2d at 218–19. A corollary of the fundamental precept that tax laws are to be strictly construed in favor of the taxpayer is that exemptions from tax statutes are to be strictly construed against the taxpayer. *Indiana Department of State Revenue v. Indiana Gamma Gamma of Alpha Tau Omega, Inc.,* (1979) Ind.App., 394 N.E.2d 187, *trans. den.* Indiana has long recognized the distinction between exemptions and deductions. *State v. Smith,* (1902) 158 Ind. 543, 63 N.E. 25. Whether or not Indiana adheres to the proposition that deductions, like exemptions, should be strictly construed against the taxpayer is not clear. *See Indiana Department of State Revenue v. Food Marketing Corp.,* 403 N.E.2d 1093 (1980) Ind.App. (Staton, J., dissenting). We need not decide that issue here, however, since we do not view the instant case as one dealing with a deduction *per se.* The Department does not challenge Endress's right to the net operating loss deduction on its federal tax return. The instant case is concerned only with whether or not the Indiana statute requires that a recognized federal deduction be disallowed or added back in to compute Indiana adjusted gross income. "The taxing policy, and the basis upon which the tax is to be levied, as well as the exemptions applicable, is for the legislature to determine. *Department of Treasury v. Crowder,* (1938) 214 Ind. 252, 15

2. Our legislature could have easily followed the example of the Oklahoma legislature which provided that for purposes of the Oklahoma Income Tax Act "adjusted gross income" means the same as "adjusted gross income" on the federal income tax return under the Internal Revenue Code with certain adjustments.

The third adjustment specifies that "net income (or loss) from a business activity, which is not part of business carried on within and without the state of a unitary character, shall be separately allocated to the state in which such activity is conducted." Okla.Stat.Ann. tit. 68, § 2358(A)(3) (West).

N.E. 89." *Western Adjustment & Inspection Co. v. Gross Income Tax Division*, (1957) 236 Ind. 639, 645, 142 N.E.2d 630, 633. Other jurisdictions which have similarly worded tax statutes have held that the legislature may prefer the consistency and efficiency gained by the use of the federal definition of taxable income as a starting point in calculating state taxes to a more complex system of computation which might result in increased revenues. *Bodine Electric Co. v. Allphin*, (1979) 70 Ill.App.3d 844, 27 Ill.Dec. 356, 389 N.E.2d 168; *First National Bank of Ottumwa v. Bair*, (1977) Iowa, 252 N.W.2d 723.

In *First National Bank of Ottumwa v. Bair* the Iowa Supreme Court faced a problem similar to the one involved here. In that case the Iowa statute provided for a franchise tax to be imposed on the "net income" of financial institutions. "Net income" was defined by statute as taxable income computed for federal income tax purposes under the Internal Revenue Code with several adjustments. The Director of the Iowa Department of Revenue sought to disallow a certain method of reporting interest involving the concept of taxable year which was permitted by the Internal Revenue Service Procedures in arriving at net income because he felt that a literal interpretation of the statute would result in absurd, impractical, or unreasonable consequences. The Iowa court held that the legislature may have made a conscious choice of balancing the efficiency and ease of using figures from the federal form against the evils suggested by the director which could only be avoided by a more complex, time consuming, and costly procedure and that it was neither impractical nor absurd for them to have chosen the former. In support of its conclusion the Iowa Supreme Court cited with approval an earlier holding by the Iowa State Board of Tax

Review which permitted (in determining net income for franchise tax purposes) the deduction of a net operating loss carry-over of a subsidiary that had been liquidated the year before where the loss had been allowed on the federal income tax return. The Board noted that the director apparently failed to distinguish between a franchise tax and a normal income tax. We feel that the Indiana Department may have similarly confused the distinction between the Indiana Gross Income Tax and Adjusted Gross Income Tax statutes.[3]

In the Illinois case, *Bodine Electric Co. v. Allphin*, 389 N.E.2d at 170, a corporate taxpayer whose Illinois taxable income is defined as "taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code" subject to specified adjustments sought to deduct on his Illinois tax return net operating loss carry-backs which were not permitted on his federal return. The Illinois court held that the Illinois Income Tax Act had adopted federal taxable income as a starting point upon which the state tax was to be computed and that terms were to be given the same meaning for both state and federal statutes. The court said:

"The state legislature has not included in the Illinois Act, either in section 102 or by other specific section, a provision inconsistent with section 172 of the Internal Revenue Code. We must, therefore, conclude that the taxpayer is entitled to a net operating loss deduction only in the same manner and amount as the taxpayer would have been entitled to such deduction on its federal income tax return for the same taxable year. The taxpayer's right to or the amount of a net operating loss deduction must, in the first instance, be measured against federal

3. Our inclination to this view is supported by the fact that the only two cases from other jurisdictions which appellant Department cites in support of its construction of the Indiana statutes are cases involving construction of gross income tax statutes. *See Ness v. Commissioner of Taxation*, (1978) Minn., 270 N.W.2d 258; *Getty Oil Co. v. Oklahoma Tax Commission*, (1977) Okla., 563 P.2d 627, *appeal dismissed*, 434 U.S. 804, 98 S.Ct. 33, 54 L.Ed.2d 62 (1977). In addition, we find these cases inapposite here since they involve constructions of statutes which specifically exclude the types of losses incurred in businesses operated outside the state in question.

taxable income. *If the taxpayer is entitled to a federal net operating loss deduction in a given year, this, in turn, may be used to reduce the taxpayer's state taxable income.*" (Our emphasis.)

389 N.E.2d at 172. Although neither of these cases is precisely on point, the approaches to the problems by state courts dealing with statutes and language remarkably similar to ours are helpful. They provide support for the position that legislatures make the tax statutes and courts enforce them as written, not as departments of revenue may wish they had been written. Such interpretations have the salutory effect of not extending the tax statutes by implication beyond the clear language of the statutes themselves, thereby enlarging their sphere of operation. We hold that we may not extend the definition of adjusted gross income by an interpretation for which there is no verbal basis in the Act. *Western Adjustment & Inspection Co. v. Gross Income Tax Division, supra; Gross Income Tax Division v. L.S. Ayres & Co.*, (1954) 233 Ind. 194, 118 N.E.2d 480. "[W]e are bound by the statutory definitions of the controlling terms used." *Gross Income Tax Division v. Crown Development Co.*, (1952) 231 Ind. 449, 456, 109 N.E.2d 426. The Department's remedy lies, therefore, in legislative changes in the tax laws, not in the judicial construction of a statute whose definition is plain on its face and which can be read in harmony with other tax statutes resulting in efficient and salutory effects intended by the legislature.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.